**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| 25 Calhoun CMB, LLC, | ) | Civil Action No. 2:19-2537-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Concord Park/Charleston, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the Court is Defendant's motion for partial summary judgment on Plaintiff's claims for breach of implied warranty and *quantum meruit* (Dkt. No. 26). For the reasons set forth below, Defendant's motion is granted.

### Background

This lawsuit concerns Plaintiff 25 Calhoun CMB, LLC's (hereinafter "Buyer") acquisition of real property located at 25 Calhoun Street in Charleston, South Carolina ("25 Calhoun" or the "Building"). On February 1, 2013, an entity related to Buyer, CMB Property Company LLC ("CMB"), purchased 25 Calhoun from Defendant Concord Park/Charleston, LLC (hereinafter "Seller") pursuant to a certain Purchase and Sale Agreement ("PSA"). (Dkt. No. 26-1). On March 12, 2013, CMB assigned Buyer ownership of 25 Calhoun. *See* Assignment and Assumption, (Dkt. No. 26-2). Per the Assignment and Assumption, Buyer accepted "to be bound by all the terms and conditions in and obligations" of CMB under the PSA. (*Id.*).

Buyer alleges that after acquiring 25 Calhoun, "the parking lot and portions of the building began experiencing problems, including . . . cracking, movement, and deterioration." Buyer

alleges it discovered 25 Calhoun contained "dangerous conditions in the parking lot, such as undulations and potholes caused by subsidence, or movement of the subgrade." Buyer undertook repair efforts to cure deficiencies in the property. (Dkt. No. 27 ¶¶ 7-8, 11). In its First Amended Complaint (the "FAC"), Buyer brings causes of action for : (1) breach of implied warranty; (2) *quantum meruit*; (3) equitable indemnification; (4) breach of contract; and (5) breach of express warranty.

Seller moves for summary judgment as to Buyer's claims for breach of implied warranty and *quantum meruit*. (Dkt. No. 26).[1] Buyer opposes. (Dkt. No. 28). Seller's motion is fully briefed and ripe for disposition.

---

[1] In its motion for summary judgment, Seller argues that only two of Buyer's claims are properly before the court: (1) breach of implied warranty and (2) *quantum meruit*. (Dkt. No. 26 at 1 & n.1). Seller notes that on May 14, 2020, the Court granted Buyer leave to amend its complaint. Order and Opinion, (Dkt. No. 24) (permitting Buyer to amend its complaint and add causes of action for equitable indemnification, breach of contract, and breach of express warranty) (the "Prior Order"). Seller also notes that the Prior Order directed Buyer to file on the docket, within ten days and in accordance with said order, a copy of the FAC. Buyer admittedly failed to timely file a copy of the FAC. (Dkt. No. 27) (filed Feb. 17, 2021). On February 26, 2021, Seller moved to strike the FAC. (Dkt. No. 29). The Court, however, denied Seller's motion to strike. Order and Opinion, (Dkt. No. 32) (noting that, at bottom, "the Court finds confounding [Seller's] argument that it operated under the assumption for 'two hundred and sixty-eight (268) days' that [Buyer] was proceeding under its original complaint—[Seller] vigorously opposed [Buyer's] motion to amend, (Dkt. No. 21) (opposing (Dkt. No. 20)—which included a copy of [the] proposed amended complaint), and was certainly aware of the Prior Order, which not only granted [Buyer] leave to amend but denied without prejudice as moot [Seller's] motion for summary judgment"). Accordingly, when Seller filed the instant motion for summary judgment, Buyer's claims for equitable indemnification, breach of contract, and breach of express warranty **were** properly before the Court. Thus, as Seller has presented no arguments showing why it is entitled to summary judgment on these claims, *see generally* (Dkt. No. 26), said claims shall proceed to trial.

## Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

Seller first moves for summary judgment on Buyer's implied warranty claim. Seller argues that the PSA expressly disclaims all implied warranties on Seller's behalf. (Dkt. No. 26 at 6-10). In its opposition, Buyer does not directly address Seller's argument. *See generally* (Dkt. No. 28).

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.,* 353 S.C. 491, 579 S.E.2d 132, 134 (2003). "Where an agreement is clear on its face and

unambiguous, 'the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement.'" *Miles v. Miles,* 393 S.C. 111, 711 S.E.2d 880, 883 (2011) (quoting *Smith–Cooper v. Cooper,* 344 S.C. 289, 543 S.E.2d 271, 274 (Ct. App. 2001)).

The PSA is "governed by . . . the laws of the State of South Carolina." (Dkt. No. 26-1 § 14.13).  Section 4.7 reads:

> **4.7** ***Continuing Agreement.***   If Purchaser does not elect to terminate this Agreement prior to the expiration of the Inspection Period, then: (a) this Agreement will remain in full force and effect, and (b) **PURCHASER WILL BE DEEMED TO HAVE ACCEPTED THE PROPERTY ON AN "AS IS" BASIS, SUBJECT ONLY TO THE REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT AND THE TERMS AND CONDITIONS SET FORTH IN THE DOCUMENTS EXECUTED AND DELIVERED AT CLOSING ("SELLER'S CLOSING DOCUMENTS"),** and (c) Purchaser will be deemed and agreed [sic] to accept title to the Property subject to the Permitted Exceptions subject to any rights of termination hereunder. **SELLER AND PURCHASER AGREE THAT THE PROPERTY WILL BE SOLD "AS IS" AND EXCEPT AS SET FORTH IN THE REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT AND THE TERMS AND CONDITIONS SET FORTH IN THE DOCUMENTS EXECUTED AND DELIVERED AT CLOSING, SUCH SALE WILL BE WITHOUT REPRESENTATION OR WARRANTY BY SELLER OF ANY KIND, EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, WARRANTY OF INCOME POTENTIAL, OPERATING EXPENSES, USES, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), AND SELLER HEREBY DISCLAIMS AND RENOUNCES ANY SUCH REPRESENTATION OR WARRANTY.**

(*Id.*§ 4.7).  "As is" is defined as follows:

> **4.8**. ***"AS IS" Defined***. As used in this Agreement, the term "**As Is**" means, as and where the Property presently exists as of the expiration of the Inspection Period, including, without limitation, all faults, defects, claims, liens, and other conditions of every kind or description with respect to (a) physical and environmental condition of the Property, including defects seen and unseen and conditions natural and artificial, (b) the Permitted Exceptions, (c) the Service Contracts assumed by Purchaser , (d) the financial operation and condition of the Property, (e) compliance with all laws, ordinances, rules and regulations to which the Property is subject, (f) all claims, demands, actions or causes of action that relate in any way to the property or the ownership and operation thereof, whether known or unknown, and (g) all other matters related in any way to the ownership and operation of the

4

> Property, whether known or unknown; subject, however, to the representations, warranties, and covenants set forth in this Agreement and the terms and conditions set forth in the documents executed and delivered at Closing.

(*Id.* § 4.8). *See also* Purchaser's Inspection, (*id.* § 4.4) (permitting, prior to closing, Buyer access to 25 Calhoun for the purposes of inspecting the property and determining, "in its sole discretion . . . the suitability of the Property as an investment by Purchaser"); First Amendment to Purchase and Sale Agreement, (Dkt. No. 26-3) (noting that "Section 4.6 is amended to provide that [Buyer] acknowledges that it has completed its inspection of the Property and [Buyer] waives its right to terminate the Agreement pursuant to Section 4.6 prior to the expiration of the Inspection Period except in the event that [Buyer] fails to obtain a Satisfactory Loan Commitment, as provided above.").

The Court grants Seller summary judgment on Buyer's implied warranty claim. The PSA's §§ 4.7 and 4.8 unambiguously show that Seller disclaimed all implied warranties related to the property and that Buyer bought 25 Calhoun "as is." *See* (Dkt. No. 26-1 § 4.7) (noting Buyer "agree[s] that the property will be sold 'as is' and except as set forth in the representations, warranties and covenants set forth in this agreement . . . such sale will be without representation or warranty by Seller of any kind, express or implied") (emphasis removed); (*Id.* § 4.8) (noting "as is" means, "without limitation, all faults, defects . . . and other conditions of every kind or description with respect to [the] physical and artificial . . . condition of the Property"); *see also* (*id.* § 4.1) (describing Seller's disclosure obligations under the PSA). Accordingly, the Court grants Seller summary judgment on this claim.

Next, Seller argues that because the PSA is valid and enforceable, and because the PSA concerns the same subject matter as Buyer's breach of contract claim, Buyer cannot pursue a *quantum meruit* claim.

To prevail on a *quantum meruit* claim, a plaintiff must establish that: (1) it conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) retention of the benefit by the defendant under the circumstances make it inequitable for the defendant to retain it without paying its value. *E.g., Swanson v. Stratos*, 564 S.E.2d 117, 119 (S.C. Ct. App. 2012).

The Court finds that relief under a *quantum meruit* theory is unavailable to Buyer. "Relief under a theory of *quantum meruit* is not available if a party bases its action on the existence of a contract." *Limehouse v. Resol. Tr. Corp.*, 862 F. Supp. 97, 103 (D.S.C. 1994); *Blanton v. Friedberg,* 819 F.2d 489 (4th Cir.1987) (under South Carolina law, normally "damages for breach of contract and recovery for *quantum meruit* are mutually exclusive remedies"); *see also Bright v. QSP, Inc.,* 20 F.3d 1300, 1306 (4th Cir.1994) (there can be no quasi-contractual recovery where there is an express contract covering the same subject matter).  Here, the PSA has not been abandoned or rescinded, and the damages Buyer allegedly incurred arise directly from obligations Buyer assumed pursuant to the PSA. *See* (Dkt. No. 28 at 9) (arguing that Buyer "is the landlord on a number of leases with tenants in 25 Calhoun" and the "material defects in the construction of the parking slab required [Buyer] to expend hundreds of thousands of dollars to be able to comply with its obligations under the leases"); PSA, (Dkt. No. 26-1 § 1.1(d)) (noting Buyer agrees to purchase "all of Seller's right, title and interest in and to all agreements listed and described on **Exhibit B** (the 'Lease Schedule'), pursuant to which any portion of the Land or Improvements is used or occupied by anyone other than Seller (the "Leases")).  Thus, the Court grants Seller summary judgment on Buyer's *quantum meruit* claim. *See Gibson v. Epting*, 827 S.E.2d 178, 183 (S.C. Ct. App. 2019) (affirming grant of summary judgment and noting that "Gibson also claims *quantum meruit*, the equitable remedy for unjust enrichment, but that cause of action cannot undo what she agreed to do in the fee agreement. . . . As we have held the November fee unambiguous

as a matter of law, Gibson cannot now claim unjust enrichment. A party cannot disavow a binding contract and pursue *quantum meruit*, no matter how green the grass of equity may seem"); *Eldeco, Inc. v. LPS Const. Co.*, No. C.A. 3:08-2295-CMC, 2009 WL 4586003, at *5 (D.S.C. Dec. 1, 2009) ("[T]he court concludes that Eldeco's right to recovery of EFOC arises in contract and cannot be maintained under a *quantum meruit* theory. As explained in *Swanson:* 'If the tasks the plaintiff is seeking compensation for under a *quantum meruit* theory are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under *quantum meruit.*'") (citing *Swanson,* 350 S.C. at 122).

In opposing the above line of reasoning, Buyer relies on *Franke Assoc. by Simmons v. Russell*, 295 S.C. 327, 368 S.E.2d 462 (1988). *Russell*, however, does not dictate a different result. In *Russell*, after the parties had presented all evidence, the trial judge directed the plaintiff to elect between sending its breach of contract or *quantum meruit* claim to the jury. On appeal, the South Carolina Supreme Court reversed and remanded for a new trial on plaintiff's *quantum meruit* claim. The Supreme Court found that the trial court's instruction was in error because the parties *disagreed* as to whether there was an agreement for the performance of the work at issue. *See id.* at 465 (noting that the evidence was sufficient to allow a jury to reach either of two opposing conclusions as to whether there was an "express written or agreed-upon price for renovations"). Here, by contrast, Buyer does not dispute that its claims arise from a valid contract—namely the PSA. "Thus, the dispute is one which turns on contract interpretation, not one which allows either party to disregard the contract and pursue a claim in *quantum meruit.*" *See Eldeco*, 2009 WL 4586003, at *5 (interpreting *Russell*).

## **<u>Conclusion</u>**

For the foregoing reasons, the Court **GRANTS** Defendant's motion for partial summary judgment on Plaintiff's claims for breach of implied warranty and *quantum meruit* (Dkt. No. 26). Plaintiff's claims for equitable indemnification, breach of contract, and breach of express warranty, however, shall proceed to trial.

**AND IT IS SO ORDERED.**

<u>s/ Richard Mark Gergel</u>
United States District Court Judge

March 19, 2021
Charleston, South Carolina