# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| 25 Calhoun CMB, LLC, ) | Civil Action No. 2:19-2537-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Concord Park/Charleston, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Defendant's motion for partial summary judgment on Plaintiff's claims for breach of contract and breach of express warranty (Dkt. No. 43). For the reasons set forth below, the Court grants in part and denies in part Defendant's motion.

## Factual Background

This lawsuit concerns Plaintiff 25 Calhoun CMB, LLC (hereinafter "Buyer")'s acquisition of real property located at 25 Calhoun Street in Charleston, South Carolina ("25 Calhoun" or the "Building"). On February 1, 2013, an entity related to Buyer, CMB Property Company LLC ("CMB"), purchased 25 Calhoun from Defendant Concord Park/Charleston, LLC (hereinafter "Seller") pursuant to a certain Purchase and Sale Agreement ("PSA"). (Dkt. No. 44-8). On March 12, 2013, CMB assigned Buyer ownership of 25 Calhoun. *See* Assignment and Assumption, (Dkt. No. 26-2). Per the Assignment and Assumption, Buyer accepted "to be bound by all the terms and conditions in and obligations" of CMB under the PSA. (*Id.*). Buyer alleges that after acquiring 25 Calhoun, "the parking lot and portions of the building began experiencing problems, including . . . cracking, movement, and deterioration." Buyer alleges it discovered 25 Calhoun contained

1

"dangerous conditions in the parking lot, such as undulations and potholes caused by subsidence, or movement of the subgrade." Buyer undertook repair efforts to cure deficiencies in the property. (Dkt. No. 27 ¶¶ 7-8, 11); Affidavit of Stephen J. Geiger, P.E., (Dkt. No. 27-1 at 3) (noting that asphalt irregularities, subsidence features, cracks in ground level masonry walls, cracks in exterior brick veneers, outward rotation of a screen/breakaway wall along column line E, and separation between exterior grade supported hardscapes and the pile supported structures were observed at the Building).

Buyer argues that Seller, in erecting the Building, was warned that constructing the parking surface under 25 Calhoun "on grade" entailed a risk of "unacceptable" settling and cracking. (Dkt. No. 44 at 2); WPC Geotechnical Engineering Report, Feb. 12, 2010 (Dkt. No. 44-1 at 6) ("Due to the presence of very soft soils, the structure should be supported on either deep foundation such as Pre-Stressed Concrete [] piles, drilled shafts, or augured cast in place piles. Alternatively, the structure may be constructed on a mat, or raft foundation supported with a series of rammed aggregate piers such as Geopiers."); *see also* 2007 WPC Geotechnical Investigation, (*Id.* at 63-64). Buyer argues that, "to save money," Seller rejected such recommendations and had the design "value engineered with the idea of letting the parking area 'float' without any support other than the soil." (Dkt. No. 44 at 2) (internal quotation marks omitted). Buyer argues that these design choices led to the damages it seeks recovery for. *See* (Dkt. No. 27-1 at 3-4) ("I have concluded that the consolidation . . . of the thick highly compressible marine clay layer is occurring and has resulted in the settlement of the grade supported construction."); (*Id.* at 4-5) (concluding "that the geotechnical engineer made inadequate characterization and recommendation in that no barrier was placed between the structural fill and the pre-existing rubble fill" and that the "geotechnical engineer failed to warn of the probability of continuing subsidence in the parking area and beneath

2

other grade supported construction, including the screen/breakaway wall solely supported by the cantilevered grade beams"); (*Id.* at 5) ("[T]he geotechnical engineer was negligent and grossly negligent in the design which has resulted in the subsidence of the parking area, the detrimental movement in the screen/breakaway wall and the associated collateral damage."). Buyer argues, and Seller does not dispute, that the above cited WPC reports were not disclosed to Buyer before it closed on the Building. First Affidavit of Patrick Marr, (Dkt. No. 44-9 ¶ 16) ("There were no WPC reports in the file of due diligence materials proved by [Seller] as part of the transaction. I was not made aware of the risk of settlement or cracking from the construction method chosen by [Seller]."). Buyer argues that such actions constitute breaches of the PSA. *See* (Dkt. No. 44-8 § 4.1) (requiring Seller to make available "environmental reports, architectural and engineering studies, and other reports by third-party consultants pertaining to the environmental condition of the Property, [and] the structural condition of the property"). Buyer further argues the fact that 25 Calhoun was built "on grade" constitutes a material defect which Seller was obliged to disclose under the PSA. *See* (*id.* § 5.8).

In its First Amended Complaint (the "FAC"), Buyer brings causes of action for: (1) breach of implied warranty; (2) *quantum meruit*; (3) equitable indemnification; (4) breach of contract; and (5) breach of express warranty.

**Procedural Background**

By prior order, the Court granted Seller summary judgment as to Buyer's claims for breach of implied warranty and *quantum meruit*. (Dkt. No. 35).

Subsequently the parties requested—and the Court entered—an amended scheduling order providing for additional time to continue discovery and file additional dispositive briefing. (Dkt. No. 41).

Seller now moves for summary judgment on Buyer's claims for breach of contract and breach of express warranty. (Dkt. Nos. 43 and 47).[1] Buyer opposes. (Dkt. No. 44).

Seller's motion is fully briefed and ripe for disposition.

## **Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

---

[1] Seller does not move for summary judgment on Buyer's claim for equitable indemnification. This claim therefore proceeds to trial.

**Discussion**

Seller argues that it is entitled to summary judgment on Buyer's claims for breach of contract and breach of express warranty as both claims are time barred. In support of this argument, Seller notes, *inter alia*, that around two years after closing on the Building, on March 17, 2015, Wilbur E. Johnson, the managing partner of Young Clement Rivers, LLP—a tenant which occupied two floors at 25 Calhoun—wrote a letter to Buyer's property manager regarding the state of the parking area. (Dkt. No. 43 at 5). The letter reads:

> On behalf of Young Clement Rivers, LLP, I write this letter because of the concern several of our attorneys have expressed to the Firm's Management Committee with regard to **loose bricks and what appears to be a failing brick wall on the east** [the "East Screen Wall"] **and, to some degree, on the southeast corner of the [Building]**.
>
> . . .
>
> Please give either myself, Joe DaPore or Ed Buckley a call and let us know what the plan is for any repair to the area which has problems and how it might impact our parking area just inside the wall on the east side of the parking garage.

(Dkt. No. 43-7) (emphasis added). Patrick Marr, President of MBR Property Company, LLC—Buyer's Managing Member—testified that he received this letter. (Dkt. No. 44-9 ¶ 1); (Dkt. No. 43-6 at 3) ("A: It was only brought to my attention when I was — when Wilbur, who was my tenant at YCR, copied me on it. That was the first I, you know, took notice that there is an issue in the screen wall on the side of the property, so."); (*Id.* at 5) ("2015, when I got the letter from YCR, is the first time that this became an issue."). Marr then testified that, in response to the letter from YCR, he visited the Building:

> Q: All right. 2015, which is Exhibit 20, and I'm going to ask you about that. Take all the time you want to review it. I would like for you to take a look at the

5

> photographs. Are these the conditions in 2015 that you were made aware of, is going to be my question?
>
> A: **These are what I saw. They look consistent after YCR complained.** So I wanted to see what he was talking about. So they look consistent. . . . When I got — when I was copied on that letter from YCR, **I went out to look at it**.

(*Id.* at 5-6) (emphasis added). The photos shown to Marr at his deposition were attachments to an April 1, 2015 email between Durlach and what appear to be various associates. Accompanying certain photos were the following descriptions:

> (1) Settlement separation of brick veneer revealing underlying structural movement of garage wall.
>
> (2) Brick veneer separation at junction of lower garage section and superstructure.
>
> (3) Brick veneer separation at stress line. Aluminum window frame damage due to settlement movement.
>
> (4) Aluminum framing separation due to settlement movement.
>
> (5) Wall movement resulting in stress fracture of brick veneer.
>
> (6) Significant movement observed along stress relief line of superstructure and lower garage façade.
>
> (7) Bilateral movement resulting in an offset of brick veneer.
>
> (8) Settlement stress fracture and grout separation of CMU wall support.
>
> (9) Asphalt cracking along perimeter of wall revealing active settlement and wall movement.
>
> (10) Interior drop ceiling framing damage due to wall movement.
>
> (11) Aluminum window framing separation resulting in water penetration and drop ceiling damage.

(Dkt. No. 43-8 at 2-14). Given Marr's above testimony, Seller argues that Buyer was made aware of, or should have reasonably begun to investigate, issues related to settlement at 25 Calhoun in or

around April 2015.  (Dkt. No. 43 at 7).   Alternatively, Seller argues that, at the least, it is entitled to summary judgment as to all claims and alleged damages pertaining to settlement of the East Screen Wall. (Dkt. No. 47 at 10-11).

In opposing Seller's motion, Buyer does not mention the letter from YCR to Marr nor contest that Marr visited 25 Calhoun. *See generally* (Dkt. No. 44).  Instead, Buyer argues that the settlement of the East Screen Wall is unrelated to the settlement of 25 Calhoun's parking surface. *See* (Dkt. No. 44 at 2, 7) ("In this lawsuit, [Buyer] is pursuing claims for damages to the parking surface, yet . . . [Seller] relies on repairs to [a] completely separate building system evidencing a completely different defect."); (*Id.* at 10) (arguing that repairs in 2015 to the East Screen Wall "were funded by the general contractor and the structural engineer" and that these "repairs did not include any repair to the parking surface."). *Contra* (Dkt. No. 27-1 at 3) (alleging that asphalt irregularities, subsidence features, cracks in ground level masonry walls, cracks in exterior brick veneers, outward rotation of a screen/breakaway wall along column line E, and separation between exterior grade supported hardscapes and the pile supported structures were observed by Buyer's expert at the Building).  Buyer further argues that that it "did not learn of the settlement issues with the parking surface until late 2016 when depressions and potholes began forming in the parking lot." (Dkt. No. 44 at 4, 10-11) (citing Second Affidavit of Patrick Marr, (Dkt. No. 44-10 ¶ 17)); (*Id.* at 1) ("[Seller] has not offered any evidence that [Buyer] was on notice of a settlement issue regarding the parking surface on or before July 18, 2016.").

South Carolina applies the "discovery rule" to determine when the statute of limitations begins to run. Under "the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 327 S.C. 116, 489 S.E.2d 615, 616

(1997) (emphasis added). The "exercise of reasonable diligence" requires that the injured party "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645, 647 (1996). The date on which the discovery of a cause of action should have been made is an objective question. *Bayle v. S. Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001). Therefore, to the extent that there is no conflicting evidence regarding whether a claimant should have known that a cause of action existed, resolution of the question is appropriate at summary judgment. *See Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672, 681 (2000).

Pursuant to S.C. Code Ann. § 15–3–530(1), the applicable statute of limitations period for breach of contract and breach of express warranty causes of action is three years. *See Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) ("An action for breach of contract must be brought within three years from the date the action accrues."); *Magnolia N. Prop. Owners' Ass'n v. Heritage Cmtys., Inc.*, 725 S.E.2d 112, 125 (S.C. Ct. App. 2012) (plaintiff's breach of express warranty claim governed by a three-year statute of limitations).

As it concerns all claims and alleged damages relating to the settlement of the East Screen Wall, the Court grants Seller summary judgment. Even drawing all inferences in favor of Buyer, the undisputed evidence demonstrates that Buyer knew, or should have reasonably discovered, beginning no later than April 2015, that the East Screen Wall was settling. Marr, effectively 25 Calhoun's President, was personally alerted in 2015 to problems concerning this screen wall. *See* (Dkt. No. 43-7) (YCR letter detailing "loose bricks and what appears to be a *failing brick wall on the east* and, to some degree, on the southwest corner" of the Building) (emphasis added). Marr testified he visited 25 Calhoun to assess the situation himself and viewed, *inter alia*, what Buyer

does not dispute is evidence of settling. *See* (Dkt. No. 43-6 at 5-7) (testimony of Marr confirming he received YCR's letter and visited the Building to observe the complained of damages and that the photos referenced *supra* were "what I saw" when he visited the Building); *see also* (Dkt. No. 43 at 7 n.3) (arguing Plaintiff's expert report prepared by Geiger contains several photos of the Building's east wall taken in July 2018 which "depict substantially similar conditions observed in the April 2015 photographs about which Marr testified that he was made aware at the time," an assertion Buyer does not contest). Thus, as Buyer was made aware that the East Screen Wall was settling beginning around April 2015, and as this lawsuit was not initiated until July 19, 2019, (Dkt. No. 1-4), more than three years later, the Court finds that Buyer's claims for breach of contract and breach of express warranty—as they relate to this screen wall—are time barred under § 15-3-535. *See Wiggins v. Edwards*, 314 S.C. 126, 128, 442 S.E.2d 169, 170 (1994) ("The important date under the discovery rule is the date that a plaintiff discovers the injury, not the date of the discovery of the identity of [the] wrongdoer."); *True*, 327 S.C. at 118 ("the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another.").

As it concerns the remainder of Buyer's claims, however, Seller's motion is denied. The Court finds that, on the record before it, a jury question exists as to whether settlement of the East Screen Wall was "of the same nature" as the settlement of the parking surface such that the statute of limitations on Buyer's claims began to run in 2015. *See Dean*, 321 S.C. at 364-65; (Dkt. No. 43-4 at 2) (September 16, 2013 letter from PES, the structural engineer of 25 Calhoun during its original construction, to Cox Schewpp Construction, Inc., explaining that while the bottom level of the Building was "supported on grade," the parking level was enclosed by "breakaway walls"

9

which were "supported [by a separate] grade beam system around the perimeter of the building. The grade beams are attached to the pile caps. The design of the grade beams span between the pile caps; however, the grade beams rely on partial support from the soil (beam on elastic foundation) to resist displacement of the grade beams."); Geiger Deposition, (Dkt. No. 47-5 at 2-) ("Q: The screen wall, is that grade supported, or is that on some sort of underlying structural elements? A: Well, the wall itself is supported on a concrete grade beam. A grade beam along column line E is cantilevered off of the pile caps along column line B, so that the grade beam is not infinitely stiff, so it relies on some partial support of the soil below it.").

## Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Concord Park/Charleston, LLC's motion for partial summary judgment as to Buyer's claims for breach of contract and breach of express warranty (Dkt. No. 42). As detailed herein, the motion is granted as to all claims and alleged damages relating to settlement of the East Screen Wall only. Seller's motion is otherwise denied.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 13, 2021
Charleston, South Carolina

10